IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 1:13-CR-48 |
| | ) |
| KEITH WILLIE REED, | ) |
| | ) |
| STANLEY RAY WINSTON, AKA "STANLEY WILSON" AND "RASHAD WINSTON" | ) |
| | ) |
| ANTHONY CANNON, AND | ) |
| | ) |
| TOBIAS RICHARD DYER | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Co-defendants Keith Willie Reed, Stanley Ray Winston, Anthony Cannon, and Tobias Richard Dyer's motions for compassionate release.

In December 2012, Defendants committed three armed robberies in Northern Virginia, whereby Cannon, Dyer, and Winston would enter a business wearing masks and brandishing firearms, and Reed would serve as a getaway driver. Defendants were all charged and convicted on Count I of conspiracy to commit Hobbs Act robbery pursuant to 18 U.S.C. § 1951(a), on Counts II-IV of Hobbs Act robbery pursuant to §§ 2 & 1951(a), on Count V of armed robbery of a federal credit union pursuant to §§ 2 & 2113(a) and (d), on Counts VI-VIII of using a firearm

1

during a crime of violence pursuant to §§ 2 & 924(c)(1)(A), and on Counts IX-XII of possession of a firearm by a convicted felon pursuant to § 922(g)(1) (one count for each defendant respectively).

For the crime of violence counts, Defendants received mandatory minimum sentences of 60 months on Count VI, mandatory minimum sentences of 300 months on Count VII, and mandatory minimum sentences of 300 months on Count VIII, all to run consecutively to each other. For all other counts, the Defendants were sentenced to 60 months, to run concurrently to each other and consecutively to the crime of violence counts. Therefore, each Defendant was to serve 720 months in federal prison.

Defendants have also been involved in several other violent incidents. Between the second and third robberies in the instant case, Defendants Winston and Cannon murdered a witness in another case to prevent him from testifying at trial and were given life sentences. In that same period, Defendants Dyer and Reed received a sentence of 240 months after they robbed and shot an employee in the face while he was carrying money from a business to an armored transport vehicle. Defendant Cannon was also found guilty of an earlier armed robbery in which a victim was shot, and was sentenced 780 months.

All Defendants have filed motions for compassionate release relying on both similar and distinct grounds.

On February 4, 2021, Defendant Cannon made a request to the Warden at United States Penitentiary ("USP") Canaan for compassionate release citing the COVID-19 pandemic. After the Warden denied his request, on March 8, 2021, Cannon filed the instant compassionate release motion, again pointing to COVID-19 but also raising two additional grounds. He argues that his release is warranted because he was sentenced before the First Step Act, which created a disparity in sentencing for similarly situated defendants with multiple convictions under 18 U.S.C. § 924(c) after the Act eliminated the "stacking" of multiple mandatory minimum sentences. He also contends that his rehabilitative efforts warrant a reduction in his sentence.

On March 26, 2021, Defendant Dyer made a request to the Warden at USP Lee for compassionate release based on a § 924(c) "stacking" argument. That request was denied, and Dyer filed the instant motion on May 7, 2021. He makes the "stacking" argument, but also raises for the first time that his age at the time of the offenses justifies his release.

On February 9, 2021, Defendant Reed made a compassionate release request to the Warden at USP Canaan based on COVID-19. That request was rejected and on March 8, 2021, he filed the instant motion, again citing COVID-19 but also making additional

3

arguments based on § 924 "stacking" and his rehabilitative efforts.

On January 5, 2021, Defendant Winston made a compassionate release request to the Warden at USP Victorville based on a "stacking" argument. That request was rejected, and Winston, represented by the Federal Public Defender's Office, proceeded to file a compassionate release motion on May 24, 2021, making the same "stacking" argument. The Court denied that motion after finding the sentencing disparity due to "stacking" in Winston's case did not constitute an extraordinary and compelling reason for release and finding that the mandatory sentencing factors also weighed against granting his request. On December 12, 2022, Winston filed the instant motion for compassionate release relying on the same "stacking" argument. He did so without first filing any request with the Warden or the federal Bureau of Prisons ("BOP").

The government has filed an omnibus opposition to all the aforementioned motions for compassionate release. Having been fully briefed, the Court is prepared to rule on each motion.

Under § 3582(c)(1)(A), a court is authorized to reduce a sentence upon a defendant's motion for compassionate release if it finds that "extraordinary and compelling reasons warrant such a reduction[.]" However, a court must first consider whether the defendant filing a compassionate release motion has exhausted

4

his administrative rights under the statute, when, as is the case here, the government invokes that exhaustion requirement. United States v. Muhammad, 16 F.4th 126, 130-31 (4th Cir. 2021). Defendants can meet this exhaustion requirement in two ways. Id. at 130. They must first make a request to BOP or their warden to bring a compassionate release motion on their behalf. 18 U.S.C. § 3582(c)(1)(A). If their request is denied or goes unaddressed, Defendants must either 1) fully exhaust all their administrative rights to appeal the BOP's denial of their request, or 2) wait 30 days from the date of their initial request to file a motion in district court. Id.

The Court finds that each Defendant has failed to meet the exhaustion requirement for at least some of the grounds relied upon in their compassionate release motions.

Defendant Winston's compassionate release motion completely fails to satisfy the exhaustion requirement because it was not preceded by a request to BOP. Winston cannot rely upon his January 2021 BOP request for exhaustion purposes here as that request already preceded an earlier compassionate release motion adjudicated by the Court. See, e.g., United States v. Keller, 2 F.4th 1278, 1283 (9th Cir. 2021).

Defendants Cannon and Reed's compassionate release motions partially fail to satisfy the exhaustion requirement. Unlike their COVID-19 claims, their "stacking" and rehabilitative

5

efforts arguments were not mentioned in their original compassionate release requests to their wardens. Therefore, only their COVID-19 claims have satisfied the exhaustion requirement.

Similarly, Defendant Dyer only raised a "stacking" argument in his original request to his warden. Therefore, his additional claim in the instant motion regarding his age at the time of the offenses does not satisfy the exhaustion requirement.

Therefore, the Court finds that the claims above which fail the exhaustion requirement because they were not first raised with BOP should be dismissed without prejudice.

Even assuming all of Defendants' claims satisfy the statutory exhaustion requirement, they do not constitute extraordinary or compelling reasons for release.

While § 3582(c) does not define what constitutes an extraordinary and compelling reason for release, the Sentencing Commission has offered guidance via a policy statement. See United States v. McCoy, 981 F.3d 271, 276. The policy statement refers to the defendant's medical condition, age, and family circumstances as relevant factors to consider. See U.S.S.G. § 1B1.13. While the policy statement is not binding with respect to motions brought forth by defendants, it is still helpful for courts to consult when they make their own independent determinations as to whether an extraordinary or compelling reason exists. See id. at 282, 284. Even if a court finds there

6

is an extraordinary and compelling reason for a reduction, it is further required under 18 U.S.C. § 3582(c)(1)(a) to also consider the sentencing factors outlined in § 3553(a) before granting such a reduction. Because the relevant statute is silent on the matter, Defendants bear the burden of proving they are entitled to compassionate release. See Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 57–58 (2005) ("Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief.").

All of the Defendants argue that sentencing disparities created in their cases after the First Step Act eliminated "stacking" for § 924(c) offenses present extraordinary and compelling reasons for their release. The Court finds that after considering the individual circumstances of each Defendant, their § 924(c) convictions do not present extraordinary and compelling reasons for reducing their sentences.

While the Fourth Circuit in McCoy held that district courts are permitted to take into account sentencing disparities created by the First Step Act when considering extraordinary and compelling reasons for release, it also made clear that such determinations should be done on a case-by-case basis in accordance with the individual circumstances of each defendant. 981 F.3d at 286-87. Therefore, not every defendant sentenced

7

under § 924(c)'s stacking provision is entitled to compassionate release. See id. at 287.

The Defendants' circumstances here are much different than what they were for the defendants in McCoy, such that their sentencing disparities do not constitute extraordinary and compelling reasons for release. Unlike in McCoy, the Defendants here have not yet fully served the sentences they would have theoretically received after the First Step Act. See id. at 286. If sentenced under the First Step Act and holding all else equal, Defendants' hypothetical total sentences would have been 240 months instead of the 720-month sentences they actually received. Defendants have only been in prison roughly 120 months, which means that if they were released today, they would have served only half of their hypothetical sentences under the First Step Act. In other words, releasing Defendants today would merely create another sentencing disparity between them and those sentenced after the First Step Act. Moreover, unlike the McCoy defendants, each Defendant here had a significant criminal history prior to committing the armed robberies in the instant case. See id. at 274. Each Defendant had both juvenile adjudications and adult convictions that resulted in significant criminal history categories: IV for Cannon, III for Dyer, VI for Reed, and II for Winston. Because of these differences from

8

McCoy, Defendants' "stacking" claims do not present extraordinary and compelling reasons for release.

Defendants Reed and Cannon argue that COVID-19 presents extraordinary and compelling reasons for their release.

When defendants have cited COVID-19 as a factor in support of compassionate release, courts have required them to demonstrate both a particularized susceptibility to the disease and a particularized risk of contracting the disease in their prison facility. See United States v. Reams, 847 F. App'x 199, 199 (4th Cir. 2021) (per curiam). To determine whether defendants have demonstrated a particularized susceptibility to COVID-19, courts have examined whether they suffer from a medical condition identified by the Centers for Disease Control ("CDC") as a COVID-19 risk factor. See, e.g., United States v. Chandler, 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020). When asking whether defendants face a particularized risk of contracting COVID-19 in their prison facilities, courts have looked to the amount of active cases in those facilities. See, e.g., United States v. Jennings, 2021 WL 2815013, at *2 (E.D. Va. July 6, 2021).

The Court finds that Defendants Reed and Cannon do not face either a particularized susceptibility to COVID-19 nor a particularized risk of contracting COVID-19. While Reed asserts that he suffers from asthma, a COVID-19 risk factor under the

9

CDC, he has provided no evidence of such a diagnosis and his BOP medical records from the last couple of years also fail to support his claim. Cannon has not identified any serious medical condition that makes him particularly susceptible to COVID-19. Defendants Reed and Cannon are both serving their sentences at USP Canaan, which, as of March 21, 2023, has no active COVID-19 cases amongst its inmates or staff according to BOP records. BOP COVID-19 Statistics, BOP (March 21, 2023), https://www.bop.gov/coronavirus/covid19_statistics.html. Therefore, neither Defendant is at particular risk of contracting COVID-19. Finally, it should be noted that both Defendants have been fully vaccinated against COVID-19. Multiple circuits have cited access to vaccines as an important mitigating factor when evaluating compassionate release motions. See, e.g., United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021).

Defendants Reed and Cannon also argue that their rehabilitative efforts constitute extraordinary and compelling reasons for their release.

The current law makes clear that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason" for release. 28 U.S.C. § 994(t) (emphasis added). While completing educational courses in prison and

10

keeping clear of disciplinary infractions are positive measures, they are not sufficiently exceptional on their own to justify compassionate release. See United States v. High, 997 F.3d 181, 190 (4th Cir. 2021).

The Court finds that Reed and Cannon's rehabilitative efforts are insufficient to constitute extraordinary and compelling reasons for release. While Reed and Cannon may have improved themselves through the various courses they have taken, that is not evidence of exceptional conduct warranting release. Moreover, neither Reed nor Cannon have kept a clear record while in custody: Reed was recently sanctioned on July 31, 2022, for assaulting an individual and Cannon had five disciplinary violations between August 2016 and July 2022, including participation in a fight with numerous other inmates.

Defendant Dyer has argued that his age at the time of his offenses is an extraordinary and compelling reason for his release.

District courts can consider the relative youth of defendants at the time of their offenses when evaluating their compassionate release motions, but only as one of several factors in an individualized inquiry. McCoy, 981 F.3d at 288. For example, certain courts have discounted the relative youth of defendants factor as an extraordinary or compelling reason for release when such defendants already had extensive criminal

11

histories at the time of their offenses. See, e.g., United States v. Eady, 2021 WL 2354930, at *3 (D.S.C. June 9, 2021); United States v. Hancock, No. 1:06-CR-206-2, 2021 WL 848708 (M.D.N.C. Mar. 5, 2021).

While Defendant Dyer was only 20 at the time of the offenses in the instant case, he already accrued a significant criminal history. He was assessed a criminal history category of III for engaging in an earlier armed robbery at age 17 in 2009. Therefore, the Court finds that Dyer's relative youth does not constitute an extraordinary or compelling reason for release.

The mandatory sentencing factors under 18 U.S.C. § 3553(a) also weigh against granting Defendants' request for compassionate release. Such factors include: 1) "the nature and circumstances of the underlying offense and the history and characteristics of the defendant"; 2) the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; 3) the need for the sentence to "afford adequate deterrence to criminal conduct"; 4) the need for the sentence to "protect the public from further crimes of the defendant"; 5) "the kinds of sentences available"; and 6) "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct[.]" §§ 3553(a)(1),(2),(3)&(6).

12

The seriousness of Defendants' offenses is a heavy factor against release. Defendants committed three armed robberies in which they threatened customers and employees by brandishing handguns and stole over $75,000. Courts have found violent robbery sprees to be serious offenses that warranted denying compassionate release motions. See, e.g., United States v. Thomas, 2021 WL 2379569, at *4 (E.D. Va. June 10, 2021); Yorkshire v. United States, 2021 WL 357351, at *4 (E.D. Va. Feb. 2, 2021).

Defendants' criminal histories also weigh against release. Defendant Winston had already served time in prison for two firearms offenses prior to committing the instant offenses. Prior to committing the instant offenses, Defendant Reed was convicted of robbery offenses where he and a co-conspirator would place delivery drivers in choke holds to steal their money. Defendant Cannon was convicted of carjacking crimes involving firearms prior to the instant offenses. Defendant Dyer was convicted of a robbery crime prior to the instant offenses. Defendants' repeated interactions with the criminal justice system, often for crimes involving violence, indicate they lack the necessary respect for the law that would warrant compassionate release. See United States v. Smith, 2021 WL 682067, at *7 (E.D. Va. Feb. 22, 2021).

13

The serious and violent nature of the instant offenses, as well as the violent criminal histories of Defendants, also indicates that granting release would fail to protect the public from further crimes. In addition to their role in the instant armed robbery case, Defendants Winston and Cannon murdered a witness in another case to prevent him from testifying. Defendants Dyer and Reed also committed a violent robbery in a separate case where an employee was shot in the face. Moreover, all Defendants at some point have engaged in violent or sanctionable conduct while serving their federal sentences, including assault, inmate fighting, and possession of a dangerous firearm.

Finally, reducing Defendants' sentences at this time would both fail to provide adequate deterrence and result in unwarranted sentencing disparities. Defendants have only served roughly 120 months of their 720-month sentences. As mentioned above, even if they were sentenced today they would have likely received 240-month sentences. Therefore, Defendants have yet to serve significant portions of their sentences irrespective of the applicable sentencing regime. Releasing them at this juncture would undermine the deterrent effect of such sentences and lead to unwarranted sentencing disparities between them and other similarly situated defendants.

Thus, Defendants have not met the burden of demonstrating any extraordinary and compelling reasons to justify a reduction of their sentences to time served. This Court finds that Defendants' motions for compassionate release should be DENIED. An appropriate order shall issue.

/s/ Claude M. Hilton<br>
CLAUDE M. HILTON<br>
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April _13_, 2023